IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

ROGER REID,

        Plaintiff,

    v.                                  CIVIL ACTION NO. 3:20-CV-166
                                           (GROH)

JEFF S. SANDY,
BETSY JIVIDEN,
JOHN SHEELEY,
DONTREWELL E. KELLY,
STEVEN ZITMEYER,
ERIC D. TOMLINSON,
BERNARDO SANTOS,
KYLE WILCUM,
JOSHUA CARL KELLER,
DEVIN JOSHUA NEIL,
SPENCER MATTHEW MEACHUM,
DALTON EUGENE NICODEMUS, and
VINCENZO CARINELLI,

        Defendants.

## REPORT AND RECOMMENDATION

### I.     INTRODUCTION

On October 31, 2019, the Plaintiff, by counsel filed a civil rights action[1] pursuant

to 42 U.S.C. § 1983.  ECF No. 1.[2]  An amended complaint was filed on October 9, 2020.

ECF No. 7.  A second amended complaint was filed on February 3, 2021.  ECF No. 21.

A third amended complaint was filed on April 30, 2021.  ECF No. 34.

This case is before the undersigned for an initial review and report and

---

[1]  The case was initiated as a separate civil rights action with five plaintiffs.  ECF No. 3:19-CV-185.
That complaint was repeatedly amended, and an additional plaintiff was added, but on September 8, 2020,
the plaintiffs' cases were severed by the Court. Plaintiff filed this complaint and this case was opened as a
result of that severance order.  ECF No. 3:19-CV-185, ECF No. 28.

[2]  All ECF number cited herein are in 3:20-CV-166, unless otherwise noted.

recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§§ 1915(e) and 1915A.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Allegations in the Third Amended Complaint

In his third amended complaint filed on April 30, 2021, Plaintiff asserts that while he was incarcerated in the Eastern Regional Jail ("ERJ") in the Northern District of West Virginia, he was assaulted by ERJ staff on two separate dates.   Plaintiff's factual assertions summarized below are taken from the recitation in paragraphs 12 to 36 of the third amended complaint.   Further, Plaintiff asserts a pattern of behavior by some Defendants which occurred on both dates.

#### 1.   November 2017 incident

Plaintiff asserts that on November 12, 2017, he got into a "wrestling altercation with another inmate".   ECF No. 34 at 3, ¶ 12.   Plaintiff claims that he was "asked by [Correctional Officers] on duty to step into the hallway", which he did without resistance. He asserts that once in the hallway, Defendants Tomlinson, Santos, Kelly, Wilcum, Keller and Zitmeyer "threw him against the wall, placed his hands behind his back, handcuffed him, and then took him to the ground."   Id. at ¶¶ 13 – 14.   Plaintiff asserts that once he was on the ground, "the COs mentioned above began kneeing him and punching him in the ribs repeatedly," then applied bear mace to his face and eyes.   Id. at 3 – 4, ¶ 15 – 16.

Plaintiff claims that because of various pre-existing medical conditions, he was unable to stand up on his own, which was mistakenly interpreted by the COs as noncompliance.   Id. at 4, ¶ 17 – 18.   In response, to his perceived failure to comply, Plaintiff alleges that CO Keller placed him in a headlock, and rammed his head against

the wall, which caused Plaintiff to have a seizure.  Id. at ¶ 18.  Plaintiff claims that the COs failed to decontaminate or wash the mace off him, in violation of ERJ protocol, before he was seen by a nurse who directed that Plaintiff be placed in medical observation for 24 hours.  Id. at ¶ 19 – 20.  However, Plaintiff claims he was only observed for 12 to 14 hours before being placed "in the hole".  Despite instructions to place Plaintiff in a cell with another individual and provide a mat on the floor to avoid falling off a bed, Plaintiff was placed in a cell alone on a raised bed, from which he subsequently fell.  Id. at ¶ 21. Further, Plaintiff asserts that he had a second seizure which was so severe that he urinated on himself.  Id. at ¶ 22.  Following his second seizure, Plaintiff was found unconscious, on the ground and covered in his own urine, and was subsequently placed in medical observation.  Id. at ¶ 23.

Plaintiff asserts that following this incident he lost phone privileges for a week, before being released on December 4, 2017.  Id. at 5, ¶ 26.

### 2.    November 2018 incident

In November 2018, Plaintiff was reincarcerated, and asserts that COs Neil and Meachum performed a walk-through of his cell.  Id. at ¶ 27.  Plaintiff believed that the COs were reviewing his legal mail to determine if Plaintiff was preparing any grievances, or other actions.  When he attempted to prevent the officers from reviewing his legal mail, Plaintiff asserts that the officers threw him to the ground.  Id.

Plaintiff claims that CO Neil sat on Plaintiff's back and held him down while COs Kelley[3], Tomlinson, Carinelli and Nicodemus[4] handcuffed him, then kneed him in his

---

[3]  Plaintiff identified this Defendant as "Kelly", but that the Defendant's counsel spells his name as "Kelley".  The Court uses the spelling adopted by defense counsel.

[4]  Plaintiff identified this Defendant as "Nicodemus" in the caption of the third amended complaint,

torso.  Id. at ¶ 28.  Plaintiff claims that he was unable to walk as a result of the beating, and in response, CO Cornelly[5] dragged Plaintiff down the hallway, causing him to hit his head.  Id. at ¶  29 – 30.

Plaintiff claims he was then placed in a restraint chair for two hours without medical attention.  Id. at 6, ¶ 31.  Further, Plaintiff contends that when he was returned to his cell that his personal belongings, including his legal documents, including his § 1983 grievance related to the November 2017 incident, were missing.  Id. at ¶ 32.

Plaintiff also asserts that throughout his incarceration ERJ administrators disregarded the use of excessive force by COs, and "prevented prisoners from being able to obtain relief through the administrative grievance system".  Id. at ¶ ¶ 33, 34.

Plaintiff alleges that as a result of Defendants' actions he incurred, "physical injuries, pain and suffering, loss of use, annoyance, and inconvenience regarding his belongings, and severe emotional distress."  Id. at 7, ¶ 36.

### 3.    Claims for Relief

Plaintiff makes six claims for relief: (1) that he was subjected to cruel and unusual punishment by correctional officers[6] in violation of the Eighth Amendment; (2) that he was

---

but alternatively spells this name as "Nicademus" [ECF No. 34 at 5, ¶ 28].  In other pleadings, Plaintiff also uses the spelling, "Nikademus" [ECF No. 56 at 3], and "Nikodemus" [ECF No. 62 at 1].  Further, the Court notes that the Defendant's own counsel alternatively spells his name as "Nicodemus" and "Nikodemus". The Court uses the spelling used by both counsel and as identified in the caption of the third amended complaint, "Nicodemus".

[5]  CO Cornelly was not named as a defendant in this action.

[6]  In Section IV. Facts, of the third amended complaint which makes these allegations, Plaintiff names several CO defendants, Tomlinson, Santos, Kelley, Wilcum, Keller, Zitmeyer, who in 2017, allegedly surrounded him and collectively beat him, and identifies one Defendant, Keller, as the wrongdoer who allegedly placed Plaintiff in a headlock and rammed his head into a wall.  ECF No. 34 at 4, ¶ 18.  As related to the 2018 incident, Plaintiff alleges Neil and Meachum improperly searched his cell and that later Neil restrained Plaintiff while Kelly, Tomlinson, Carinelli, and Nicodemus kneed him after they handcuffed him. Id. at 5, ¶¶ 27, 28.

subjected to cruel and unusual punishment by Sandy, Jividen, and Sheeley, whom Plaintiff claims "established a policy or custom of allowing correctional officers to engage in cruel and unusual punishment"; (3) that his due process rights under the Fifth Amendment were violated by all Defendants when the Defendants "prevent[ed] Plaintiff from seeking redress" and "from seeking medical attention"[7]; (4) that Sandy, Jividen, and Sheeley engaged in negligent oversight and training of their subordinates which amounts to deliberate indifference; (5) that "Defendant Correctional Officers" assaulted Plaintiff and placed him in imminent fear of bodily harm; and (6) that all Defendants intentionally inflicted emotional distress upon Plaintiff.  Under section V. Claims, of the third amended complaint, Plaintiff fails to identify in any count which specific Correctional Officer Defendant or Defendants deprived him of his constitutional rights.

For relief, Plaintiff asks the Court to award him compensatory damages of $500,000.00 against each Defendant, jointly and severally, for his physical injuries, pain and suffering and severe emotional distress, and $5,000,000.00 against all Defendants for punitive damages.  ECF No. 34 at 12.

### B. Motion to Dismiss by Sandy, Jividen, and Sheeley

Defendants Sandy, Jividen and Sheeley ("the Administrator Defendants") filed a motion and memorandum to dismiss the third amended complaint on June 2, 2021.  ECF Nos. 43, 44.  Therein, the Administrator Defendants assert that: (1) Plaintiff has failed to state a claim upon which relief may be granted; (2) they are entitled to qualified immunity; and (3) Plaintiff's official capacity claims fail because the Administrator Defendants are

---

[7] Claims of denial of medical treatment are generally considered as claims of cruel and unusual punishment, in violation of the Eighth Amendment.  However, Plaintiff asserts this claim under his rights guaranteed by the Fifth Amendment.  ECF No. 34 at 9.

protected by sovereign immunity.  Id.

### C.    Motion to Dismiss by Carinelli, Kelley, and Nicodemus

Defendants Carinelli, Kelley, and Nicodemus filed a unified motion to dismiss and memorandum in support thereof on June 14, 2021.  ECF Nos. 47, 47-1.  Therein, Carinelli, Kelley, and Nicodemus argue that: (1) they are entitled to sovereign immunity because they are sued in their official capacity [Id. at 4]; and (2) Plaintiff fails to state a claim for a deprivation of his due process rights under the Fifth Amendment [Id. at 4 – 5].  Carinelli, Kelley, and Nicodemus filed separate answers to the third amended complaint.  ECF Nos. 48, 49, 50.  Although the answers are not identical, the answers of Carinelli, Kelley, and Nicodemus assert the same five defenses, that: (1) they are not persons for purposes of § 1983, because they were acting in their official capacity; (2) they are entitled to qualified immunity: (3) Plaintiff failed to exhaust his administrative remedies[8]; (4) Defendants, acting in their official capacity, are protected from liability by sovereign immunity; and (5) the complaint fails to state a claim upon which relief can be granted.  Id.

### D.    Motions to Dismiss by Devin Joshua Neil and Spencer Matthew Meachum

Defendant Neil and Defendant Meachum filed separate motions to dismiss, and memoranda in support thereof, on June 14, 2021.  ECF Nos. 51, 51-1, 52-, 52-1.  Both Neil and Meachum argue that: (1) Plaintiff fails to state a claim upon which relief may be granted as to: (a) his claim of an Eighth Amendment violation; (b) his claim for intentional infliction of emotional distress; and (c) his claim of a Fifth Amendment violation; (2) they

---

[8] Although exhaustion of administrative remedies is a requirement pursuant to the Prison Litigation Reform Act, prior to filing suit in federal court, Plaintiff asserts that he has exhausted his administrative remedies.  ECF No 34 at 2, ¶ 5.  No party has presented the Court with documents to verify whether Plaintiff has filed any administrative remedies, much less exhausted such remedies.

are entitled to qualified immunity; and (3) they are entitled to sovereign immunity.  ECF No. 51-1, 52-1.

### E.     Plaintiff's Response to Administrator Defendants' Motion to Dismiss

Plaintiff filed a response to the Administrator Defendants' motion to dismiss on June 16, 2021, wherein he argues his claims "clearly infer both knowledge on the part of ERJ supervisors . . . [to] cover up for the Constitutional violations of their subordinates" as alleged in Count 1 of the third amended complaint.  ECF No. 53 at 6.  Plaintiff further argues that his claims in paragraphs 25, 33, 45, and 46, of the third amended complaint "when read in *pari materia* with Plaintiff's other allegations, clearly assert the involvement of ERJ administrators in covering up correctional officers use of excessive force and encouragement of the same such that a policy of custom of the administration can be inferred." Id. at 7.  Plaintiff further argues, "[o]bviously, the Court can also reasonably infer from Plaintiff's remaining allegations that Plaintiff's injuries were causally related to this disregard as well."  Id.  Plaintiff also asserts that the same facts that support Count 1, "provide ample support" for and also apply to Counts 3, 4 and 6, of the third amended complaint.  Id. at 7 – 8.  Plaintiff further contends that the Administrator Defendants: (1) are not entitled to qualified immunity because they violated clearly established law [Id. at 8 – 10]; and (2) are not entitled to sovereign immunity [Id. at 10 – 11].

### F.     Administrator Defendants' Reply Brief

The Administrator Defendants filed a reply brief on June 23, 2021, which argued that: (1) Plaintiff failed to meet the elements necessary to establish supervisory liability; (2) Plaintiff failed to address qualified immunity of the Administrator Defendants, including the inapplicability of the doctrine of *respondeat superior*; and (3) because Plaintiff seeks

monetary damages, the Administrator Defendants are protected by sovereign immunity. ECF Nos. 55.

### G.    Plaintiff's Consolidated Response to Defendants' Motion to Dismiss

On June 28, 2021, Plaintiff filed a consolidated response to Defendants' motion to dismiss.  ECF No. 56.  Plaintiff argues that: (1) sovereign immunity does not shield the Defendants because the Eighth Amendment applies to the states by incorporation through the Fourteenth Amendment; (2) he has sufficiently asserted valid Fifth Amendment violations against all defendants; (3) he has plainly stated a claim for relief under the Eighth Amendment related to the November 2018 incident; (4) he has sufficiently stated a claim for intentional infliction of emotional distress against Meachum and Neil; and (5) the defense of qualified immunity does not protect Meachum and Neil because those defendants violated clearly established law.  Id.

Finally, Plaintiff requests that if the Court finds the complaint does not contain sufficient allegations against all named parties, that Plaintiff should be permitted to seek discovery to determine which Defendants were responsible for the alleged acts, or to otherwise correct any deficiencies.  Id.

### H.    Reply of Devin Joshua Neil and Spencer Matthew Meachum to Plaintiff's Consolidated Response

Defendants Neil and Meachum filed a reply on July 6, 2021, which argues that: (1) sovereign immunity bars Plaintiff's official capacity § 1983 claims; (2) Plaintiff fails to state a Fifth Amendment due process claim; (3) Plaintiff fails to state a claim for violation of his Eighth Amendment rights; (4) Plaintiff fails to state a claim for intentional infliction of emotional distress; and (5) qualified immunity bars Plaintiff's claims.  ECF No. 59.

I. **Reply of Vincenzo Carinelli, Dontrewell E. Kelley, and Dalton Eugene Nicodemus to Plaintiff's Consolidated Response**

Carinelli, Kelley, and Nicodemus filed a reply to Plaintiff's consolidated response on July 6, 2021, which argues that: (1) sovereign immunity bars Plaintiff's official capacity § 1983 claims; and (2) Plaintiff fails to state a Fifth Amendment due process claim.  ECF No. 60.

## III. LEGAL STANDARD

A. **§ 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257 (1978).  In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

As to whether a state or local government can be named as a defendant in a § 1983 action, the Supreme Court held that, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution

9

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted). The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's

"continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### B.      Motions to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority

and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).   In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.  ANALYSIS

### A.    Count 1: Alleged Violation of Eighth Amendment Right Against Cruel and Unusual Punishment by Defendant Correctional Officers

Plaintiff claims in Count 1 of the third amended complaint that his Eighth

Amendment rights against cruel and unusual punishment[9] were violated by the Correctional Officer Defendants, whom Plaintiff claims used excessive force against him while he was incarcerated at the Eastern Regional Jail.  Defendants argue that they are protected from Plaintiff's claims under the doctrine of sovereign immunity.

Pursuant to the holding in Gomez, to establish a cause of action under § 1983, Plaintiff must allege two acts.  First, he must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

### 1. Sovereign Immunity Protects Defendants Acting in their Official Capacity from Liability

The Supreme Court has held that:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.  That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in Quern [v. Jordan, 440 U.S. 332 (1979)].

Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45 (1989).

Plaintiff's third amended complaint names Kelley, Zitmeyer, Tomlinson, Santos,

---

[9]  The Supreme Court has recognized that excessive use of force claims should be brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, or by pretrial detainees under the Fourteenth Amendment's Due Process Clause.  Kingsley v. Hendrickson, 576 U.S. 389, 390 (2015) (citing Whitley v. Albers, 475 U.S. 312, 318 (1986)).  In the instant case, it is unclear from the third amended complaint whether Plaintiff was a convicted prisoner or a pretrial detainee in either November 2017 or November 2018.

Wilcum, Keller, Neil, Meachum, Nicodemus, and Carinelli, all of whom are identified

"personally and in [their] official capacity".[10]   ECF No. 34 at 1.   The Supreme Court

explained the distinctions between personal capacity and official capacity liability in

Kentucky v. Graham, 473 U.S. 159 (1985):

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.  More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.  When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.  While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

473 U.S. at 166–67 (cleaned up).  The Supreme Court has also explained, "Obviously,

state officials literally are persons. But a suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office.  As

such, it is no different from a suit against the State itself."  Will, 491 U.S. at 71 (citing

Brandon v. Holt, 469 U.S. 464, 471 (1985)).  Further, "The Court has held that, absent

waiver by the State or valid congressional override, the Eleventh Amendment bars a

damages action against a State in federal court."  Kentucky v. Graham, 473 at 169.

---

[10]   Defendants Sandy, Jividen, and Sheeley were all also identified as defendants personally and in their official capacities.  However, because the Court addresses the immunity from suit for those three defendants under the doctrine of qualified immunity for supervisors in section IV.B. below, the liability of those defendants is not further addressed herein.  Further, Sandy, Jividen, and Sheeley were not identified as defendant Correctional Officers in Plaintiff's third amended complaint.

For all of the above reasons, the Court finds that Plaintiff's attempt to sue State officials or employees in their official capacity is tantamount to an attempt to sue the State itself, which suit is prohibited by the Eleventh Amendment, and as recognized by the Supreme Court in <u>Kentucky v. Graham</u>.  All Defendants herein are officials or employees of the State of West Virginia, and the Court finds that Plaintiff's claims against all Defendants in their official capacity should be dismissed with prejudice.

### 2. Correctional Officer Defendants Acting in their Personal Capacity

The Court recognizes that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 34 (2010) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992).  The Supreme Court held that the "core judicial inquiry," "was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins</u>, 559 U.S. at 37, citing <u>Hudson v. McMillian</u>, 503 U.S. at 1, and <u>Whitley v. Albers</u>, 475 U.S. 312, 319 – 321 (1986).

The Fourth Circuit has held that:

> Officers employ force in good faith – and thus permissibly – when they are motivated by an immediate risk to physical safety or threat to prison order.  But they cross the line into an impermissible motive when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct.  And the use of force on an inmate who is restrained and compliant and posing no physical threat raises the specter of such an impermissible motive.

<u>Dean v. Jones</u>, 984 F.3d 295, 302 (4th Cir. 2021) (internal quotations and citations omitted).

Plaintiff asserts that he was beaten by Correctional Officer Defendants in November 2017 while restrained, following an altercation with another inmate. ECF No. 34 at 3, ¶¶ 12 – 15. Further, Plaintiff claims that during that beating he did not resist and was restrained. Id. Plaintiff also claims he was sprayed with mace after he was already restrained. Id. at 4, ¶ 16.

As to his claim that he was assaulted by Correctional Officer Defendants in November 2018, Plaintiff asserts that he attempted to physically prevent Neil and Meachum from searching his cell, especially from reviewing his legal mail. ECF No. 34 at 5, ¶ 27. Plaintiff contends that following his attempts to grab his legal mail from the officers' hands, "the officers threw him to the ground in response." Id. Plaintiff claims he was then handcuffed and while restrained, Correctional Officers Kelley, Tomlinson, Carinelli and Nicodemus repeatedly struck him with their knees in his torso. Id. at ¶ 28.

In their motions to dismiss, Neil and Meachum argue that by Plaintiff's own admission there was a need for the application of force based on Plaintiff's "aggressive manner" of interaction with Neil. ECF No. 51-1. Both Neil and Meachum cite to Hudson to support their claims of immunity from suit. Hudson explains:

> What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue, for two reasons. First, the general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged. Second, the Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society, and so admits of few absolute limitations.

> The objective component of an Eighth Amendment claim is therefore contextual and responsive to contemporary standards of decency.

503 U.S. at 8 (internal quotations and citations omitted).   In considering Defendants' motions to dismiss for failure to state a claim, pursuant to <u>Mylan</u>, the Court must take as true Plaintiff's well-pleaded allegations, and must view the complaint in the light most favorable to the Plaintiff.   The complaint alleges that Plaintiff was beaten while restrained on two separate dates.   None of the Correctional Officer Defendants have refuted that claim, nor have they provided a defense which would grant them immunity from liability in their personal capacities.   Further, none of the Correctional Officer Defendants have addressed whether their actions imposed unnecessary and wanton infliction of pain.   The Court recognizes that correctional officers who permissibly employ force in good faith when they are motivated by an immediate risk to physical safety or threat to prison order, however, our contemporary standards of decency do not accept the beating of an inmate after that inmate is handcuffed or otherwise restrained.

Accordingly, it appears to the Court that Plaintiff's claims as to excessive use of force against Plaintiff while restrained should proceed for further disposition.   Defendants' motions to dismiss on this ground should thus be denied.

**B.**   **Count 2: Alleged Violation of Plaintiff's Eighth Amendment Rights Against Cruel and Unusual Punishment by Administrator Defendants**

**1.**   **Sovereign Immunity Doctrine Protects Defendants Acting in their Official Capacity from Liability**

For all the reasons stated in Section IV.A.1. above, the Administrator Defendants are not liable in their official capacities for any alleged violations of the Eighth Amendment, as alleged in Count 2 of the third amended complaint.

### 2.   Qualified Immunity Doctrine Protects Administrator Defendants Acting in their Personal Capacity from Liability

Plaintiff claims that the Administrator Defendants established a policy of custom of allowing correctional officers to engage in cruel and unusual punishment, and through being deliberately indifferent to Plaintiff's injuries, which he claims were caused through excessive use of force by the Correctional Officer Defendants.  ECF No. 34 at 8 – 9, ¶¶ 45 – 50.  However, Plaintiff fails to allege that any of the Administrator Defendants, Sandy, Jividen or Sheeley, "through the official's own individual actions, has violated the Constitution," as required by Iqbal.  To the extent that Plaintiff alleges that Sandy, Jividen and Sheeley are responsible for the actions of subordinate officials at the Eastern Regional Jail, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

The three Administrator Defendants, none of whom Plaintiff alleges had any contact with him directly, had, at most, only supervisory responsibility for acts of their subordinates who had contact with Plaintiff.  However, "Government officials may not be held liable for the unconstitutional conduct of their subordinates."  Ashcroft v. Iqbal, supra, 556 U.S. at 676.  Plaintiff claims these supervisory officials established policies and customs which allowed correctional officer to engage in cruel and unusual punishment to maintain order in the Eastern Regional Jail. ECF No. 34 at 8 – 9.  However, Plaintiff does not identify or explain what those policies or customs are, when they were established or adopted, how the Administrator Defendants were involved with the establishment of the policies, that the Administrator Defendants were deliberately indifferent to the implementation of the policies, or that they were even aware of the implementation of such policies.  Succinctly, Plaintiff fails to state how the Administrator Defendants violated his

civil rights, or how their actions violated any law or the Constitution.

As noted above, vicarious liability under the theory of respondeat superior is inapplicable to § 1983 actions.   Section 1983 claims are brought against individual state actors for their own acts.   Ashcroft v. Iqbal, supra, 556 U.S. at 676.   However, Plaintiff has failed to articulate any violation of his Constitutional rights by Sandy, Jividen or Sheeley. Further, Plaintiff failed to allege that those named supervisory officials personally or in their individual capacities took any action which violated his Constitutional rights.   Accordingly, the Court finds the Administrator Defendants are entitled to qualified immunity against Plaintiff's claims.   Further, the Court finds that the Administrator Defendants are not liable as the supervisors of subordinates who Plaintiff claims violated his rights.   Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to the Administrator Defendants. Because Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and Count 2 of his complaint should be dismissed with prejudice as to Sandy, Jividen and Sheeley.

### C.    Count 3: Alleged Violation of Fifth Amendment Due Process Rights by All Defendants

#### 1.    Administrator Defendants

For all the reasons stated in Section IV.B. above, the Administrator Defendants are not liable for any alleged violations of the Fifth Amendment, as alleged in Count 3 of the third amended complaint.

#### 2.    Correctional Officer Defendants

For all the reasons stated in Section IV.A.1. above, the doctrine of sovereign immunity protects the Correctional Officer Defendants acting in their official capacities for

19

any alleged violations of the Fifth Amendment, as alleged in Count 3 of the third amended complaint.

As to Plaintiff's allegations that the Correctional Officer Defendants acted in their personal capacities with deliberate indifference to his serious medical need, to demonstrate liability, Plaintiff must satisfy the two-prong test established in Farmer v. Brennan, 511 U.S. 825 (1994). Farmer requires Plaintiff to first demonstrate, objectively, the existence of a "serious medical need." 511 U.S. at 834. Second, Plaintiff must prove that the official acted with "deliberate indifference." Id.

With respect to the first prong, required proof consists of evidence that the medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

### a. November 2017 Incident

Plaintiff alleges that in 2017, following a beating by several Correctional Officer Defendants, that he had a seizure and was placed in medical observation. Plaintiff claims that the length of that medical observation period was insufficient. After at 12 – 14 hours period of observation, Plaintiff asserts he was placed in a cell with a raised bed, instead of on a mat on the floor, and that he later fell from the raised bed during a second seizure. Following the second seizure Plaintiff asserts that he was again placed in medical observation. Plaintiff does not assert that he suffered any physical injury as a result or that he received insufficient or inadequate medical treatment following his fall from his bed. Rather, he claims he was "prevented from seeking medical attention." However, the allegations in Plaintiff's third amended complaint demonstrate the opposite: that he

20

was twice placed in medical observation in November 2017.  Accordingly, Plaintiff's claim that he was denied medical treatment in November 2017 appears unfounded, and he fails to state a claim upon which relief may be granted as to that allegation.

But as to Plaintiff's claim that he was not properly decontaminated after being sprayed with bear mace, none of the Correctional Officer Defendants have refuted that claim, nor have they provided a defense which would grant them immunity from liability in their personal capacities.  Further, none of the Correctional Officer Defendants have addressed whether their actions were deliberately indifferent to an obvious serious medical need.  The Court recognizes that correctional officers need to react to prevent immediate risk to physical safety or threat to prison order.  However, while the decontamination of an individual sprayed with mace appears to be an obvious medical need, the seriousness of such need is unclear.  Nevertheless, the failure to decontaminate a person exposed to mace is so obvious that even a lay person would easily recognize the necessity to do so.

Accordingly, it appears to the Court that Plaintiff's claims that his Fifth Amendment due process rights were violated should proceed for further disposition.  Defendants' motions to dismiss on this ground should thus be denied.

### b.  November 2018 Incident

As to Plaintiff's claims that he was denied medical treatment in November 2018, Plaintiff asserts that he was placed in a restraint chair for two hours without medical attention.  Plaintiff, who has sarcoidosis, a pre-existing lung condition, claims that during that time he had difficulty breathing.

Difficulty breathing is clearly a serious medical need.  Plaintiff alleged he had difficulty breathing, while restrained in November 2018.  Further, Plaintiff asserted that Defendants acted with deliberate indifference to his serious medical need, that being his ability to breathe.

A bald assertion of entitlement to relief, without more, is insufficient to merit relief. "While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim,' . . . Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, n. 3 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957) (emphasis added).  Plaintiff appears to have met the minimum standard of pleading, that is he has presented some factual allegations which provides fair notice of the nature of the claim, and also the grounds on which the claim rests.

Further, none of the Correctional Officer Defendants have refuted Plaintiff's claim that he was in respiratory distress, nor have they provided a defense which would grant them immunity from liability in their personal capacities.  Further, none of the Correctional Officer Defendants have addressed whether Plaintiff claimed he was having difficulty breathing, whether they observed Plaintiff to have troubled breathing, or whether any contemporaneous documentation confirms or refutes his claims.

Accordingly, it appears to the Court that Plaintiff's claims in Count 3, against Correctional Officer Defendants acting in their personal capacity, regarding those Defendants' failure to provide adequate medical care or their deliberate indifference to

Plaintiff's serious medical condition, should proceed for further disposition.  Defendants'
motions to dismiss on this ground should thus be denied.

> **D.**     **Count 4: Alleged Violation of Plaintiff's Fifth and Eighth Amendment
> Rights by Administrator Defendants**

For all the reasons stated in Section IV.B. above, the Administrator Defendants
are not liable for any alleged violations of the Fifth Amendment, as alleged in Count 4 of
the third amended complaint.

> **E.**     **Count 5: Alleged Violation of Plaintiff's Rights by Assault and Battery
> by Correctional Officer Defendants**

For all the reasons stated in Section IV.A.1. above, the Correctional Officer
Defendants are not liable in their official capacities for any alleged violations of Plaintiff's
rights, as alleged in Count 5 of the third amended complaint.

As to Plaintiff's allegations that the Correctional Officer Defendants acted in their
personal capacities to assault or batter him, he appears to raise an excessive use of force
claim.  Plaintiff asserts that the Correctional Officer Defendants engaged in offensive
touching of his person which was not related to any legitimate correctional purpose.

The incident in November 2017, followed Plaintiff engaged in a "wrestling
altercation" with another inmate. ECF No. 34 at 3.  As noted above, when officers employ
force in good faith when they are motivated by an immediate risk to physical safety or
threat to prison order, that use of force is permissible.  <u>Dean v. Jones</u>, 984 F.3d at 302.
However, prison officials "cross the line into an impermissible motive when they inflict
pain not to protect safety or prison discipline but to punish or retaliate against an inmate
for his prior conduct.  And the use of force on an inmate who is restrained and compliant
and posing no physical threat raises the specter of such an impermissible motive."  <u>Id.</u>

Plaintiff has alleged that he was both restrained and compliant following the November 2017 incident, when the Correctional Officer Defendants beat him. Plaintiff also claims that he was restrained in November 2018 when he was again beaten by Correctional Officers, although it appears the reason he was handcuffed or otherwise restrained in November 2018, was that he was not compliant on that date.

Nonetheless, none of the Correctional Officer Defendants have refuted Plaintiff's claim that he was restrained and compliant when force was used upon him. Nor have any Correctional Officer Defendants provided a defense which would grant them immunity from liability in their personal capacities.

Accordingly, it appears to the Court that Plaintiff's claims of excessive use of force[11] in Count 5, against Correctional Officer Defendants acting in their personal capacity, should proceed for further disposition. Defendants' motions to dismiss on this ground should thus be denied.

### F. Count 6: Alleged Violation of Plaintiff's Rights by Intentional Infliction of Emotional Distress by All Defendants

#### 1. Administrator Defendants

For all the reasons stated in Section IV.B. above, the Administrator Defendants are not liable for any alleged violations of the Fifth Amendment, as alleged in Count 6 of the third amended complaint.

#### 2. Correctional Officer Defendants

For all the reasons stated in Section IV.A.1. above, the doctrine of sovereign immunity protects the Correctional Officer Defendants acting in their official capacities for any alleged violations of Plaintiff's rights, as alleged in Count 6 of the third amended

---

[11] Plaintiff asserted his claim as "Assault and Battery Against Defendant Correctional Officers".

complaint.

As to the Correctional Officer Defendants acting in their personal capacity, it appears to the Court that Plaintiff has failed to state a claim upon which relief may be granted.  In their motions to dismiss, both Neil and Meachum argue that Plaintiff fails to state a claim for the intentional infliction of emotional distress.  ECF Nos. 51-1 at 5 – 6; 52-1 at 5 – 6.  Both Defendants cite to the holding of the Supreme Court of Appeals of West Virginia in <u>Travis v. Alcon Lab'ys, Inc.</u>, 202 W. Va. 369, 375, 504 S.E.2d 419, 425 (1998), which provides:

> [I]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

<u>Travis</u> more fully explains the showing necessary for each of these four elements.

Here, the Court here focuses on the fourth element:

> [T]here must be a showing that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Severe emotional distress includes (but is not limited to) such reactions as mental suffering and anguish, shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. However, it is only where the emotional distress is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law

> intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

202 W. Va. at 380, 504 S.E.2d at 430 (internal citations omitted).  Plaintiff's third amended complaint alleges that he suffered "severe emotional distress", without describing in any further detail what constituted that severe emotional distress.  ECF No. 34 at 11, ¶ 68.

Plaintiff does not show that he is entitled to relief based on this assertion.  Such a bald assertion, without more, is insufficient to merit relief.   "While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim,' . . . Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, n. 3 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957) (emphasis added).   Without some factual allegation in the complaint, it is impossible for the undersigned to consider how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests, and it is not the undersigned's obligation to construct the Plaintiff's argument for him.  "[J]udges are [ ] not required to construct a party's legal arguments for him."  Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).  The Court is not required to construct arguments for the Plaintiff and cannot consider any arguments which Plaintiff does not present himself.

Accordingly, Plaintiff fails to state a claim upon which relief may be granted as to his claim of intentional infliction of emotional distress by the Correctional Officer Defendants, and that claim should be dismissed with prejudice.

## V.  RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDED** that Petitioner's

section 1983 third amended complaint [ECF No. 34] be **DENIED and DISMISSED WITH PREJUDICE** as to Sandy, Jividen, and Sheeley.   It is also **RECOMMENDED** that Petitioner's third amended complaint, as to the Correctional Officer Defendants, Kelley, Zitmeyer, Tomlinson, Santos, Wilcum, Keller, Neil, Meachum, Nicodemus, Carinelli, acting in their official capacity, as alleged in Counts 1, 3, 5, 6, be **DENIED and DISMISSED WITH PREJUDICE.**   It is also **RECOMMENDED** that Petitioner's third amended complaint, as to the Correctional Officer Defendants acting in their personal capacity, as alleged in **Count 6** be **DENIED and DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

However, it is further **RECOMMENDED** that Counts 1, 3, and 5 of the third amended complaint, as to the Correctional Officer Defendants acting in their personal capacity, should **PROCEED** for further disposition.

It is further **RECOMMENDED** that Defendants' Motions to Dismiss [ECF No. 43] should be GRANTED.   It is also RECOMMENDED that Defendants' Motions to Dismiss [ECF Nos. 47, 51, 52] be **GRANTED IN PART**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:      December 14, 2021

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

28