**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

**ROGER REID,**

      Plaintiff,

    **v.**                             **CIVIL CASE NO.: 3:20-CV-166
(GROH)**

**JEFF S. SANDY, personally and in his official
capacity as Secretary of West Virginia
Department of Military Affairs and Public Safety,
BETSY JIVIDEN, personally and in her official
capacity as Department of Corrections Commissioner,
JOHN SHEELEY, personally and in his official
capacity as Eastern Regional Jail Warden/Superintendent,
DONTREWELL E. KELLEY, correctional officer,
personally and in his official capacity,
STEVEN ZENTMYER, correctional officer,
personally and in his official capacity,
ERIC D. TOMLINSON, correctional officer,
personally and in his official capacity,
DEVIN JOSHUA NEIL, correctional officer,
personally and in his official capacity,
SPENCER MATTHEW MEACHUM, correctional officer,
personally and in his official capacity,
DALTON EUGENE NICODEMUS, correctional officer,
personally and in his official capacity,
BERNARDO SANTOS, correctional officer,
personally and in his official capacity,
KYLE WILCOM, correctional officer,
personally and in his official capacity, and
VINCENZO CARINELLI, correctional officer,
personally and in his official capacity,**

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART</u>

    Pending before the Court is the Report and Recommendation ("R&R") of United

States Magistrate Judge Robert W. Trumble.  ECF No. 68.  Pursuant to this Court's Local

Rules, this action was referred to Magistrate Judge Trumble for submission of a proposed R&R. Magistrate Judge Trumble issued his R&R on December 14, 2021.

In his R&R, Magistrate Judge Trumble recommends that the Plaintiff's Complaint be denied and dismissed with prejudice as to Defendants Sandy, Jividen, and Sheeley; Counts One, Three, Five and Six be denied and dismissed with prejudice as to Defendants Kelley[1], Zentmyer[2], Tomlinson, Santos, Wilcom[3], Keller[4], Neil, Meachum, Nicodemus[5] and Carinelli acting in their official capacity; Count Six be denied and dismissed with prejudice as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their personal capacity; and Counts One, Three and Five should proceed for further disposition as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their personal capacity. The R&R further recommended that Defendants Sandy, Jividen and Sheeley's Motion to Dismiss [ECF No. 43] be granted; Defendants' Carinelli, Kelley and Nicodemus's Motion to Dismiss [ECF No. 47] be granted in part; Defendant Neil's Motion to Dismiss [ECF No. 51] be granted in part and Defendant Meachum's Motion to Dismiss [ECF No. 52] be granted in part.

For the reasons set forth below, this Court **ADOPTS** the R&R **IN PART**. In deviating from the R&R, this Court will dismiss Count Three without prejudice and Count

---

[1] The Plaintiff identified this Defendant as "Kelly", but the Defendant's counsel spells his name as "Kelley." The Court uses the spelling adopted by defense counsel.

[2] The Plaintiff identified this Defendant as "Zitmeyer," but the Defendant's counsel spells his name as "Zentmyer." The Court uses the spelling adopted by defense counsel.

[3] The Plaintiff identified this Defendant as "Wilcum", but the Defendant's counsel spells his name as "Wilcom." The Court uses the spelling adopted by defense counsel.

[4] Defendant Joshua Carl Keller was dismissed from this case on January 27, 2022, after the filing of the R&R, pursuant to a voluntary dismissal filed by the Plaintiff and agreed to by the Defendant. ECF No. 83.

[5] The Defendant's name is spelled inconsistently by both parties, but this Court uses the most commonly used spelling, Nicodemus.

Four with prejudice as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their personal capacity.  Further, the Court will grant Defendant Neil's Motion to Dismiss [ECF No. 51] and grant Defendant Meachum's Motion to Dismiss [ECF No. 52].  The claims made in Count One and Five of the complaint, against all Correctional Officer Defendants, except Defendants Neil and Meachum who are dismissed from the Complaint entirely, will be allowed to proceed for further disposition.

## I.    BACKGROUND

Upon review of the record, the Court finds that the facts as explained in the R&R accurately and succinctly describe the circumstances underlying the Plaintiffs' claims. The Court incorporates those facts herein.  However, the Court has outlined the most relevant facts below and added additional details where necessary.

### A. Procedural History

The Plaintiff, through counsel, initially filed a civil rights action pursuant to 42 U.S.C. § 1983 on October 31, 2019.[6]  ECF No. 1.  The Clerk of Court notified the Plaintiff of his deficient pleading, and the Plaintiff filed an amended complaint on October 9, 2020. ECF No. 7.  After the Plaintiff failed to pay the initial partial filing fee, this Court dismissed the Plaintiff's amended complaint without prejudice for failure to prosecute on January 12, 2021.  ECF No. 14.  Upon payment from the Plaintiff and the Court's granting of the

---

[6] This case began as a separate civil rights action with five plaintiffs. ECF No. 3:19-CV-185. That complaint was repeatedly amended, and an additional plaintiff was added, but on September 8, 2020, the plaintiffs' cases were severed by the Court. Upon the filing of the amended complaint by Plaintiff Reid, this case was opened pursuant to the Court's severance order. ECF No. 28 in ECF No. 3:19-CV-185; ECF No. 7 in 3:20-CV-166.

Plaintiff's motion to amend, the Plaintiff filed a second amended complaint on February 3, 2021.  ECF No. 21.  A third, and final, amended complaint was filed on April 30, 2021. ECF No. 34.

The Plaintiff's present complaint was brought "to redress the deprivation under color of law, of rights secured by the Constitution of the United States," pursuant to 42 U.S.C. § 1983.  ECF No. 34 at ¶ 1.  Accordingly, the Plaintiff asserts that the Court has jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).  The Plaintiff also seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65 and "29 USC §§ 2283 & 2284."  ECF No. 34 at ¶ 2.  However, the Court notes that these two code sections fall within the workforce investment systems chapter of the labor title of the United States Code, and both have been repealed. 29 U.S.C. §§ 2283, 2284.  The Plaintiff does not expand upon the injunctive relief sought. Lastly, as it pertains to this Court's jurisdiction, the Plaintiff asserts that he "has constructively exhausted all administrative remedies." ECF No. 34 at ¶ 5.

The Defendants named in the complaint can be separated into two groups: correctional officers and administrators.  Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli, (collectively, "Correctional Officer Defendants"), were, at the time of the incidents alleged, employed as correctional officers at the Eastern Regional Jail.  Defendants Sandy, Jividen and Sheeley (collectively, "Administrator Defendants"), were all employed in an administrative capacity with either the State of West Virginia or the Eastern Regional Jail.  All Defendants were named in both their official and personal capacities.  The Complaint includes six counts: (1) a violation of the Eighth Amendment right to be free from cruel and unusual

punishment against the Correctional Officer Defendants, (2) a violation of the Eighth Amendment right to be free from cruel and unusual punishment against the Administrator Defendants, (3) a violation of due process under the Fifth Amendment against all named Defendants, (4) negligent training and oversight and failure to act on repeated constitutional violations against the Administrator Defendants, (5) assault and battery against the Correctional Officer Defendants and (6) intentional infliction of emotional distress against all named Defendants.

Defendants Sandy, Jividen and Sheeley filed a Motion to Dismiss for Failure to State a Claim on June 2, 2021.  ECF No. 43.  In their supporting Memorandum of Law, the Administrator Defendants aver that they are immune from suit in their personal capacity due to qualified immunity, that they are immune from suit in their official capacity due to sovereign immunity provided by the Eleventh Amendment, and that the Plaintiff has failed to plead facts plausibly suggestive of a claim for relief.  ECF No. 44.

Defendants Carinelli, Kelley and Nicodemus, all of whom are correctional officers, filed a partial motion to dismiss on June 14, 2021.  ECF No. 47.  Therein, Defendants Carinelli, Kelley and Nicodemus invoke protection under sovereign immunity for the Plaintiff's claims against them in their official capacity.   The three correctional officer Defendants also argue that the Plaintiff has failed to state a claim for deprivation of due process under the Fifth Amendment as presented in Count Three of the complaint. Defendants Nicodemus, Kelley and Carinelli filed separate answers to the Plaintiff's third amended complaint, but each answer raises the same five defenses.   Most of the Defendants' defenses are also raised in their motion to dismiss; however, the Defendants more broadly assert that the Plaintiff has failed to state a claim generally, and here, for

the first time, the Defendants assert that the Plaintiff did not exhaust his administrative remedies before filing the underlying complaint.  ECF Nos. 48 at 2, 49 at 2, 50 at 2.

Defendant Neil and Defendant Meachum separately filed Motions to Dismiss, [ECF Nos. 51, 52, respectively] but both motions raise the same three arguments: (1) the Plaintiff failed to state a claim for an Eighth Amendment violation, for intentional infliction of emotional distress and for a Fifth Amendment violation; (2) qualified immunity protects them from the Plaintiff's claims against them in their personal capacity and (3) sovereign immunity protects them from the Plaintiff's claims against them in their official capacity.

Magistrate Judge Trumble filed an R&R in this case on December 14, 2021.  ECF No. 68.  Objections to Magistrate Judge Trumble's R&R were due within fourteen days.  The Plaintiff, by counsel, filed objections on December 28, 2021.  ECF No. 71.  Defendants Carinelli, Kelley and Nicodemus submitted objections on December 28, 2021, as well.  ECF No. 72.

Subsequent to the filing of the R&R and objections, Defendants Tomlinson, Zentmyer and Wilcom filed a partial motion to dismiss jointly and answers to the Plaintiff's complaint separately.  ECF Nos. 79, 80, 81, 82.  In the Defendants' motion to dismiss, they assert the protection of sovereign immunity for the Plaintiff's claims against them in their official capacity and aver that the Plaintiff has failed to state claims for a deprivation of due process under the Fifth Amendment and intentional infliction of emotional distress.  ECF No. 79.  While Defendants Tomlinson, Zentmyer and Wilcom each filed answers to the Plaintiff's third amended complaint separately, they all assert the same five defenses.  ECF Nos. 80, 81, 82.  Most of the Defendants' defenses are also raised in their motion to dismiss; however, the Defendants more broadly assert that the Plaintiff has failed to state

a claim generally, and here, for the first time, the Defendants assert that the Plaintiff did not exhaust his administrative remedies before filing the underlying complaint.

In sum, the following filings remain pending before the Court: the Administrator Defendants' Motion to Dismiss [ECF No. 43], Defendants Carinelli, Kelley and Nicodemus's Motion to Dismiss [ECF No. 47], Defendant Neil's Motion to Dismiss [ECF No. 51], Defendant Meachum's Motion to Dismiss [ECF No. 52], Magistrate Judge Trumble's R&R [ECF No. 68] and Defendants Tomlinson, Zentmyer and Wilcom's Motion to Dismiss [79]. The Plaintiff filed a Response [ECF No. 53] to the Administrator Defendants' motion and a consolidated Response [ECF No. 56] to the motions filed by the Correctional Officer Defendants. The Defendants filed timely Replies [ECF Nos. 55, 59, 60]. The Court notes that the parties stipulated that the Plaintiff's Response to Defendants Tomlinson, Zentmyer and Wilcom's motion to dismiss was not due until March 10, 2022. ECF No. 84. The Plaintiff timely filed its Response on March 10, 2022. ECF No. 85. Accordingly, all pending motions are now ripe for review.

### B. Factual History

The following facts are construed from the Plaintiff's third amended complaint [ECF No. 34], and the facts are construed in the light most favorable to the Plaintiff. The allegations set forth in the Plaintiff's complaint stem from events occurring at the Eastern Regional Jail on two separate days: November 12, 2017, and a day in November of 2018. The Plaintiff does not provide a date for the second day but instead explains that "in November of 2018, Mr. Reid again found himself incarcerated," and the actions underlying the complaint occurred "[o]ne day after his return to custody." ECF No. 34 at ¶¶ 26-27.

### 1.  November 12, 2017

On November 12, 2017, the Plaintiff concedes that he engaged in "a wresting altercation with another inmate."  ECF No. 34 at ¶ 12.  In response to this altercation, the Plaintiff was "asked by [Correctional Officers] on duty to step into the hallway," which he did without resistance.  ECF No. 34 at ¶ 12.  In the hallway, Defendants Tomlinson, Santos, Kelly, Wilcom and Zentmyer "threw him against the wall, placed his hands behind his back, handcuffed him, and then took him to the ground."  ECF No. 34 at ¶ 14.  Once the Plaintiff was on the ground, "the COs mentioned above began kneeing him and punching him in the ribs repeatedly."[7]  ECF No. 34 at ¶ 15.  Then, the correctional officers sprayed bear mace to the Plaintiff's face and eyes.  The correctional officers did not wash, or otherwise remove, the mace from the Plaintiff, which the Plaintiff contends is a violation of ERJ policy.

After his interaction with the correctional officers, the Plaintiff was seen by a nurse. The Plaintiff believes that he should have remained in medical observation for twenty-four hours, but Defendant Tomlinson took him to "the hole" after twelve or fourteen hours. Once there, the Plaintiff had to sleep in a cell alone on a raised bed, in contradiction to the nurse's instructions to place Plaintiff in a cell with another individual and provide a mat on the floor.  During the night, the Plaintiff fell off the bed, had a seizure, and urinated on himself.  The Plaintiff was then returned to medical observation.

---

[7] The Complaint and R&R further describe this incident and the actions taken by Correctional Officer Joshua Carl Keller.  However, Mr. Keller was dismissed from this case on January 27, 2022, after the filing of the R&R, pursuant to a voluntary dismissal filed by the Plaintiff and agreed to by the Defendant. ECF No. 83. Therefore, those facts are no longer relevant.

### 2.  November 2018

In November 2018, Defendants Neil and Meachum entered the Plaintiff's cell to conduct a "walk-through."  ECF No. 34 at ¶ 27.  While in his cell, the Plaintiff observed Defendants Neil and Meachum "look[ing] through his legal mail."  ECF No. 34 at ¶ 27. The Plaintiff approached the Defendants and "attempted to grab his legal mail from the officers' hands." ECF No. 34 at ¶ 27.

In response, Defendants Neil and Meachum threw the Plaintiff to the ground.  Once on the ground, Defendant Neil sat on the Plaintiff's back until additional correctional officers arrived.   Defendants Kelley, Tomlinson, Carinelli and Nicodemus "swarmed around him, handcuffed him, and then, with [Plaintiff] in handcuffs, began to knee him repeatedly in his torso."  ECF No. 34 at ¶ 29.  The Plaintiff was then taken to a conference room and placed in a restraint chair, where he remained for two hours.[8]  The Plaintiff informed the correctional officers that he could not breathe, but he was ignored and accused of faking his ailments.  When he returned to his cell, his legal documents were missing, including a bag that contained a grievance filed against the ERJ after the November 2017 incident.

## II.    LEGAL STANDARD & APPLICABLE LAW

### A.  Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the

---

[8] In the Complaint, the Plaintiff describes actions taken by two other correctional officers. However, neither officer is named in the Complaint, and thus their actions are not relevant.

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  Further, failure to file timely objections constitutes a waiver of *de novo* review and the Petitioner's right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Pursuant to this Court's Local Rules, "written objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection."  LR PL P 12(b).  The Local Rules also prohibit objections that "exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation."  LR PL P 12(d).

"When a party does make objections, but these objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, de novo review is unnecessary."  Green v. Rubenstein, 644 F. Supp. 2d 723, 730 (S.D. W.Va. 2009) (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). If "only a general objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a clear error review." Williams v. New York State Div. of Parole, No. 9:10-CV-1533 (GTS/DEP), 2012 WL 2873569, at *2 (N.D.N.Y. July 12, 2012).  "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a clear error review."  Taylor v. Astrue, 32 F. Supp. 3d 253, 260-61 (N.D.N.Y. 2012).

Courts have also held that when a party's objection lacks adequate specificity, the party waives that objection.  See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (finding that even though a party filed objections to the magistrate judge's R&R, they were not specific enough to preserve the claim for review).  Bare statements "devoid of any reference to specific findings or recommendations . . . and unsupported by legal authority, [are] not sufficient."  Id. at 766.  Pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules, "referring the court to previously filed papers or arguments does not constitute an adequate objection." Id.; see also Fed. R. Civ. P. 72(b); LR PL P 12.  Finally, the Fourth Circuit has long held, "[a]bsent objection, we do not believe that any explanation need be given for adopting [an R&R]."  Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983) (finding that without an objection, no explanation whatsoever is required of the district court when adopting an R&R).

### B.  42 U.S.C. § 1983

The Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 does not itself provide any substantive rights.  Instead, it is a procedural vehicle through which a plaintiff can enforce their constitutional rights against state actors. In relevant part, section 1983 allows a plaintiff to file suit against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .." 42 U.S.C. § 1983.

To state a claim under section 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins,

487 U.S. 42, 48 (1988).  In cases with multiple individual defendants, the plaintiff must plead that each defendant, through his or her own actions, caused the alleged constitutional injury.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Vicarious liability does not exist under section 1983.  Id.

However, the Fourth Circuit does recognize the theory of supervisory liability under § 1983.  A supervisor can be liable when (1) he knew that his subordinate "was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff," (2) his response was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (3) an "affirmative causal link" existed between "the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Supervisory liability is not a claim in and of itself, but instead, it is a theory by which a plaintiff can hold a supervisor or manager liable for a constitutional violation committed by a subordinate.  A constitutional violation must still be pled.

Further, depending on which constitutional right is alleged to have been violated, different standards may apply.  The two constitutional protections implicated in this case are the Eighth Amendment right to be free from cruel and unusual punishment and the Fifth Amendment right to due process.

### 1.  Eighth Amendment

When a plaintiff alleges that their Eighth Amendment right to be free from cruel and unusual punishment has been violated, two standards may apply.  If the plaintiff is alleging that they were denied medical care, then the "deliberate indifference" standard applies.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  If the plaintiff is alleging

excessive use of force, then the "malicious and sadistic use of force for the purpose of causing harm" standard applies.  Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The Plaintiff's third amended complaint appears to implicate both standards.

Deliberate indifference lies somewhere between negligence and purposefulness. A state actor acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  To succeed on a deliberate indifference claim, a plaintiff must first demonstrate, objectively, the existence of a serious medical need, and second, a plaintiff must show that the defendant, subjectively, knew of the underlying facts, the substantial risk of serious harm those facts presented, and drew the inference between the facts and the harm.  Id.

Unlike the deliberate indifference standard, which accounts for a state actor's time and ability to weigh the facts presented to him and deliberate as to which course of action to take, the "malicious and sadistic use of force for the purpose of causing harm" standard applies to decisions made in haste, under pressure, and without the luxury of a second chance.  Whitley, 475 U.S. at 320-21.  When a plaintiff alleges excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (first citing Hudson v. McMillian, 503 U.S. 1, 4 (1992) then citing Whitley, 475 U.S. at 319–21).  The Fourth Circuit recently held that "the use of force on an inmate who is restrained and compliant and posing no physical threat raises the specter of such an

impermissible motive." <u>Dean v. Jones</u>, 984 F.3d 295, 302 (4th Cir. 2021) (internal quotations and citations omitted).

### 2. Fifth Amendment

As of the date of this Order, the Supreme Court has only allowed Fifth Amendment claims under section 1983 pursuant to the enforcement of the takings clause, <u>Knick v. Township of Scott</u>, 139 S. Ct. 2162 (2019), and a criminal defendant's right to be free from self-incrimination, <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003). As it pertains to the right to due process, the Fifth Amendment's Due Process Clause applies to the federal government. U.S. Const. amend V ("No person … shall …be deprived of life, liberty, or property, without due process of law . . ."). The Fourteenth Amendment's Due Process Clause applies to state and local governments. U.S. Const. amend XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . ."). Because section 1983 is a vehicle by which plaintiffs can assert claims against state actors, the Fifth Amendment is not the proper constitutional amendment to assert due process protections claims through.

### III.    DISCUSSION

The Plaintiff timely filed objections to the R&R and Defendants Carinelli, Kelley, Nicodemus, Meachum and Neil, collectively, filed a timely objection to the R&R as well. The Plaintiff raises five objections: (1) the R&R erred in finding that the Plaintiff failed to establish supervisory liability as applied to the Administrator Defendants, (2) the R&R erred in finding that the Administrator Defendants are protected by qualified immunity, (3) the R&R erred in finding that the Administrator Defendants did not violate the Plaintiff's

Fifth Amendment due process rights, (4) the R&R erred by dismissing Count Four and (5) the R&R erred by dismissing Count Six.  ECF No. 71.  Defendants Carinelli, Kelley, Nicodemus, Meachum and Neil, collectively, raised one objection: the R&R erred by not dismissing Count Three against all named Defendants.  ECF No. 72.  The Court will address each objection in turn, followed by the Court's reasoning in departing from the R&R in part.

### A. Plaintiff's Objection to the R&R's Finding that the Plaintiff Failed to Establish Supervisory Liability as Applied to the Administrator Defendants

The Plaintiff's first objection asserts that the R&R erred when it found that the Plaintiff did not sufficiently allege the theory of supervisory liability to hold the Administrator Defendants liable.  In the Plaintiff's objection, the Plaintiff cites to the R&R's finding on pages eighteen and nineteen, so the Court construes this objection as pertaining to the R&R's dismissal of Count Two of the complaint.  In the objection, the Plaintiff largely relies on quoting text from the complaint.  "[W]hen an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a clear error review."  Taylor, 32 F. Supp. 3d at 260-61.  Because the Plaintiff supports his objection only with arguments presented in his complaint, the Court will review the R&R's finding for clear error.

The R&R correctly found that the Plaintiff failed to sufficiently allege a theory of supervisory liability.  The complaint and objection refer to an alleged policy and custom of the Administrator Defendants.  However, under section 1983, proof of unconstitutional policies or customs are used to allege municipal liability.  Monell v. Dep't of Soc. Servs.

of City of New York, 436 U.S. 658, 690-91 (1978) (holding that "[l]ocal governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"  and for "practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law").  An unconstitutional custom is attributed to the government body when the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees."   Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987).

Supervisory liability, on the other hand, is a theory promulgated by the Fourth Circuit, and its elements are clear.  To hold a supervisor liable for constitutional violations committed by a subordinate, a plaintiff must show that (1) a supervisor knew his subordinate "was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff," (2) the supervisor's response was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (3) an "affirmative causal link" existed between "the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Supervisory liability places "a heavy burden of proof" on a plaintiff.  Id.  To prove just the first element, a plaintiff must show "that the conduct is widespread, or at least has been used on several different occasions."  Id.  Further, to prove the second element, a plaintiff must show the "supervisor's continued inaction in the face of documented widespread abuses." Id.

16

The R&R also referenced the policy or custom standard, so this Court will review Count Two under the supervisory liability set forth in <u>Shaw</u>.  Count Two will still be dismissed as recommended in the R&R.  The complaint fails to allege any facts showing that any of the Administrator Defendants had knowledge that their subordinates "engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury." <u>Id.</u>  Failure on the first element is enough to dismiss the cause of action, as the standard for supervisory liability requires that all three elements must be satisfied.  Nonetheless, the Court also finds that the complaint does not allege any facts showing how the Administrator Defendants responded so inadequately as to show "deliberate indifference to or tacit authorization of the alleged offensive practices." <u>Id.</u>

Instead, Count Two of the complaint is supported by conclusory statements of law, such as "[Administrator Defendants] established a policy or custom of allowing correctional officers to engage in cruel and unusual punishment without fear of punishment."  ECF No. 34 at ¶ 45.  This statement sets forth a legal conclusion with no specific underlying factual support.  Similarly, Count Two alleges that the Administrator Defendants had a "policy, custom, pattern and practice of encouraging, either explicitly or by their deliberate indifference, the denial of medical care to prisoners following use of excessive force." ECF No. 34 at ¶ 48.  Again, this statement sets forth a legal conclusion instead of providing facts.   Lastly, Count Two alleges that the Administrator Defendants violated the Plaintiff's Eighth Amendment rights by "making efforts to prevent Plaintiff . . . from filing grievances and documenting their injuries."[9]  ECF No. 34 at ¶ 49.  "[M]aking efforts" is not a sufficient factual allegation to prove supervisory liability.  Further, the

---

[9] The Court notes that the act of preventing an inmate from filing grievances or compiling documentation of abuses is not a valid claim under the Eighth Amendment.

Administrator Defendants are not mentioned once in the factual summary section of the complaint.  The Plaintiff's complaint is void of any specific, direct action taken by any of the Administrator Defendants.

Ultimately, none of the Plaintiff's statements show that the Administrator Defendants had knowledge that their subordinates engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury or that they responded so inadequately as to show deliberate indifference to or tacit authorization of the alleged offensive practices as required by Shaw.  Instead, the paragraphs supporting Count Two merely regurgitate key phrases found in various cases of section 1983 precedent without attaching concrete actions to any of its legal conclusions.  Therefore, this Court finds that the Plaintiff failed to sufficiently plead supervisory liability pursuant to an Eighth Amendment violation by the Administrator Defendants in Count Two of the complaint. Accordingly, the Plaintiff's objection to the dismissal of Count Two is **OVERRULED**.

### B. Plaintiff's Objection to the R&R's Finding that the Administrator Defendants are Protected by Qualified Immunity

The Plaintiff's second objection argues that the Administrator Defendants are not entitled to qualified immunity.  In support, the Plaintiff provides that "the allegations in the Complaint make plain that Defendant Administrators established a policy and custom of permitting the violation of Constitutional rights to keep prisoners in line and preventing prisoners from obtaining redress for said violations."  ECF No. 71 at 4.  Again, because the Plaintiff simply reiterates information presented in the complaint, the Court will review the R&R's finding of qualified immunity for clear error.

The doctrine of qualified immunity protects government officials from civil liability so long as the offending official's conduct "does not violate clearly established statutory

18

or constitutional rights of which a reasonable person would have known.'" Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity serves to balance "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The legal question of whether a defendant is entitled to qualified immunity must be decided by the court, not the jury. Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005). Therefore, "[u]nless a plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009).

Qualified immunity protects state actors "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow, 457 U.S. at 818). "[C]ourts have discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." Id. A right is clearly established when "its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Carroll v. Carman, 574 U.S. 13, 17 (2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The illegality of the official's conduct must be "apparent" in "light of pre-existing law." Anderson, 483 U.S. at 640. A court generally need only look to decisions of the United States Supreme Court, the controlling court of appeals, and the highest court of the state where the case arose to determine whether the law clearly establishes a right.

Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004).  However, a plaintiff can pierce the veil of qualified immunity by citing "'to cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" Booker v. S.C. Dep't of Corr., 855 F.3d 533, 539 (4th Cir. 2017) (quoting Ashcroft, 563 U.S. at 742).

Here, the Plaintiff has provided no case law showing that the Administrator Defendants violated a clearly established right.  The only precedent that the Plaintiff cites to is Pearson v. Callahan, which was a Fourth Amendment case that set forth the current qualified immunity standard.  The Plaintiff has not pled a violation of his Fourth Amendment rights, so the underlying constitutional violation in Pearson provides no guidance here.  Further, as discussed above, the Plaintiff has not sufficiently pled facts to implicate supervisory liability with respect to the Administrator Defendants.

The only factual information provided by the Plaintiff with respect to the Administrator Defendants is that they "established a policy or custom of allowing correctional officers to engage in cruel and unusual punishment" and "ma[de] efforts" to prevent the Plaintiff from filing grievances.  ECF No. 34 at ¶¶ 45, 49.  Because the complaint is devoid of facts to rely on, the Court is unable to find governing precedent that shows whether the law clearly establishes a right here.  Accordingly, this Court finds that the Administrator Defendants are entitled to qualified immunity and the Plaintiff's objection contesting their protection is **OVERRULED**.

**C. Plaintiff's Objection to the R&R's Finding that the Administrator Defendants Did Not Violate the Plaintiff's Fifth Amendment Due Process Rights**

The Plaintiff's third objection asserts that the R&R erred by dismissing the Administrator Defendants from Count Three of the complaint.  In support, the Plaintiff references the arguments made in the prior two objections regarding supervisory liability and qualified immunity.  The Plaintiff also "highlight[s] paragraphs 33 and 52 of the Complaint as explicitly setting forth facts which give rise to a 5th amendment violation against the Administrator Defendants."  ECF No. 71.  Because this objection is supported by information already provided in the complaint, the Court will review for clear error.  Further, the Plaintiff's objection is unsupported by any legal authority.

While the R&R affords the Administrator Defendants qualified immunity as to this Count, this Court finds that an analysis into qualified immunity or supervisory liability is not necessary because a due process cause of action under the Fifth Amendment against state actors is not actionable under section 1983.  The Fifth Amendment's Due Process Clause applies to the federal government, while the Fourteenth Amendment's Due Process Clause applies to state and local governments.  Section 1983 is a vehicle by which plaintiffs can assert claims against state actors, making the Fourteenth Amendment the proper constitutional amendment to assert due process protections claims under. Because the Plaintiff has pled his due process claim under the Fifth Amendment, this claim is not actionable under section 1983 and must be dismissed.  Accordingly, the Plaintiff's objection to the dismissal of the Administrator Defendants from Count Three is **OVERRULED**.

### D.  Plaintiff's Objection to the R&R's Dismissal of Count Four

The Plaintiff's fourth objection asserts that the R&R erred by dismissing Count Four of the complaint.  Count Four of the complaint alleges "negligent training and oversight and failure to act on repeated constitutional violations" against the Administrator Defendants.  ECF No. 34 at 10.  In support, the Plaintiff largely relies on quoting and citing text from the complaint.  Therefore, the Court will review the R&R's finding for clear error.

While the R&R supports its dismissal on the basis that the Plaintiff failed to plead supervisory liability sufficiently and the Administrator Defendants are entitled to qualified immunity, the Court finds that Count Four can be dismissed without an analysis into either. Negligent training and oversight is not a cause of action under section 1983; instead, it is one of the theories a plaintiff may use when alleging a constitutional violation against a municipality. City of Canton v. Harris, 489 U.S. 378, 389-92 (1989) (holding that "a city can be liable under § 1983 for inadequate training of its employees" when "the failure to train amounts to deliberate indifference).  The R&R liberally construed Plaintiff's complaint on this count by reframing the cause of action as a violation of the Plaintiff's Fifth and Eighth Amendments.  However, in his objection, the Plaintiff reiterated that the cause of action alleged in Count Four is "negligent training and oversight."  ECF No. 71 at 5 n.1.

Negligent training and oversight is not a civil rights violation, but a tort claim. The Plaintiff filed his complaint pursuant to 42 U.S. C. § 1983 and 28 U.S.C §§ 1331, 1343(a)(3), none of which provide this Court with jurisdiction to hear a tort claim.  While this Court would have supplemental jurisdiction to hear state court claims arising out of

the same set of facts, the Plaintiff did not plead supplemental jurisdiction under 28 U.S.C. § 1367.[10]

"It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Section 1367(a) provides federal courts with the authority to exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). To exercise that authority, a federal court "must first have original jurisdiction over at least one claim in the action." Exxon Mobil v. Allapattah Servs., 545 U.S. 546, 554 (2005); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). However, a federal court's authority to exercise supplemental jurisdiction is discretionary. 28 U.S.C. § 1367(c); Gibbs, 383 U.S. at 726 (finding that supplemental jurisdiction "need not be exercised in every case in which it is found to exist" and supplemental jurisdiction is a "doctrine of discretion, not of [a party's] right").

Moreover, there is no evidence in the Plaintiff's complaint, responses, or objection that the Plaintiff intended to file Count Four as a state law tort claim. While Count Four of the complaint and the Plaintiff's objection are devoid of any legal authority, both repeatedly reference constitutional rights, constitutional violations, and deliberate indifference, which relate to section 1983 precedent, not tort. Therefore, the Court infers that the Plaintiff did intend to assert this cause of action under section 1983.

---

[10] The Court further notes that, even if jurisdiction had been established for a state law tort claim, West Virginia does not recognize a stand-alone negligent training or supervision claim. West Heslep v. Americans for Afr. Adoption, Inc., 890 F. Supp. 2d 671, 687 (N.D.W. Va. 2012) (first citing Webb v. Raleigh Cnty. Sheriff's Dep't, 761 F.Supp.2d 378, 397 (S.D.W.Va.2010); then citing Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719, 725 (W.Va. 2000)).

Even if this Court were to again liberally construe Plaintiff's claim to properly reframe the Plaintiff's cause of action under section 1983, Count Four would still be dismissed because the Administrator Defendants are not a municipality, and the theory of negligent training and supervision cannot be applied to hold them liable. Accordingly, the Plaintiff's objection to the R&R's dismissal of Count Four is **OVERRULED**.

### E.  Plaintiff's Objection the R&R's Dismissal of Count Six

The Plaintiff's fifth objection asserts that the R&R erred by dismissing Count Six of the complaint. In support, the Plaintiff references the arguments made in the prior listed objections, as well as the facts already pled in the complaint. Because the Plaintiff only reiterates information presented in the complaint, the Court will review the R&R's finding of qualified immunity for clear error.

Count Six of the Plaintiff's complaint alleges "intentional infliction of emotional distress against all named defendants." ECF No. 34 at 11. Similar to negligent training and supervision, intentional infliction of emotional distress is not actionable under section 1983. Intentional infliction of emotional distress is a tort, not a civil rights violation, and section 1983 is a procedural vehicle through which a plaintiff can enforce their constitutional rights against state actors.

As noted in the previous section, the Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331,1343(a)(3), none of which provide this Court with jurisdiction to hear a tort claim. Because "the burden of establishing the contrary rests upon the party asserting jurisdiction," the Plaintiff would need to invoke supplemental jurisdiction under 28 U.S.C. § 1367. However, there is no evidence in the Plaintiff's complaint, responses, or objection that the Plaintiff intended to file Count Six as a state

24

law tort claim.  The Plaintiff's complaint and objection are both devoid of any legal authority, but references are made to policy, custom, and deliberate indifference, which relate to section 1983 precedent, not tort.  Therefore, the Court infers that the Plaintiff did intend to assert this cause of action under section 1983.

Even if the Plaintiff properly asserted an intentional infliction of emotional distress claim, the Plaintiff cannot satisfy the state law standard of intentional infliction of emotional distress.  To succeed on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) "the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," (2) "the defendant acted with the intent to inflict emotional distress," (3) "the actions of the defendant caused the plaintiff to suffer emotional distress" and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."  Travis v. Alcon Lab'ys, Inc., 504 S.E.2d 419, 425 (W.Va. 1998).   A plaintiff is required to plead facts satisfying all four elements.

The R&R correctly found that the Plaintiff failed to satisfy the test in Travis when applied to the Correctional Officer Defendants.  The R&R focused on the fourth element and correctly found that the Plaintiff failed to show that he suffered emotional distress "so severe that no reasonable person could be expected to endure it."  Id.  Instead, the Plaintiff merely states a legal conclusion, asserting that he suffered severe emotional distress, without describing in any further detail what constituted that severe emotional distress.  Further, when this test is applied against the Administrator Defendants, the Plaintiff's claim fails on the first element as the Plaintiff failed to describe any actions taken

by the Administrator Defendants at all, let alone actions that were "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Id.

Because the Plaintiff did not properly assert an intentional infliction of emotional distress claim, and would not be able to satisfy the standard for such a claim if the Court reviewed it on the merits, Count Six of the Plaintiff's complaint should be dismissed. Accordingly, the Plaintiff's objection is **OVERRULED**.

### F.  Defendants' Objection to the R&R's Failure to Dismiss Count Three

Defendants Carinelli, Kelley, Nicodemus, Meachum and Neil object to the R&R's failure to dismiss Count Three of the complaint against all named defendants.  ECF No. 72.  The R&R dismissed Count Three only as asserted against the Administrator Defendants.  In support, the Correctional Officer Defendants argue that the R&R misapplied section 1983 precedent when deciding that the Plaintiff's due process claim should proceed.  Specifically, the Defendants take issue with the R&R's reliance on the analysis set forth in Farmer v. Brennan, 511 U.S. 825 (1994).  The Defendants aver that the test promulgated in Farmer is properly applied to section 1983 claims enforcing the Eighth Amendment, not the Fifth Amendment.  This Court agrees with the Defendants' objection and **DECLINES TO ADOPT** the R&R's recommendation that Count Three, against Correctional Officer Defendants acting in their personal capacity, should proceed for further disposition.

The Supreme Court in Farmer addressed a claim alleging inhumane conditions of confinement under the Eighth Amendment.  511 U.S. at 832-33.  In adjudicating the plaintiff's allegation, the Supreme Court held that a state actor could be held liable for his

deliberate indifference to a substantial risk of serious harm to an inmate. Id.  This analysis does not apply to a due process claim.

In further support of their objection, the Defendants also argue that the Fifth Amendment does not apply to the actions of states and that the Plaintiff failed to state a due process violation regardless.   As discussed in this Order in detail above, due process claims under the Fifth Amendment cannot be asserted against state actors.  Section 1983 is a vehicle by which plaintiffs can assert claims against state actors, making the Fourteenth Amendment the proper constitutional amendment to assert due process protections claims under.  Because the Plaintiff has pled his due process claim under the Fifth Amendment, that claim presented in Count Three is not actionable under section 1983 and must be dismissed.

### G.  Dismissal of Defendants Meachum and Neil

The Court departs from the R&R with respect to the status of Defendants Meachum and Neil.  The R&R recommends that Defendant Meachum's Motion to Dismiss [ECF No. 52] and Defendant Neil's Motion to Dismiss [ECF No. 51] be granted in part. However, this Court finds that both motions should be granted.

Defendants Meachum and Neil should be dismissed from the Complaint because the Plaintiff has failed to state a claim against these two Defendants.  After the dismissal of Counts Two, Three, Four and Six, the only remaining cause of action is a violation of the Eighth Amendment and assault and battery.  According to the Plaintiff's complaint, Defendants Meachum and Neil were present only during the November 2018 incident. On that day, Defendants Meachum and Neil were conducting a "walk-through" of the Plaintiff's cell.   ECF No. 34 at ¶ 27.   The Plaintiff admits that he approached the

Defendants and "attempted to grab his legal mail from the officers' hands." ECF No. 34 at ¶ 27.  In response, Defendants Neil and Meachum threw the Plaintiff to the ground.  At this point, the Plaintiff was unrestrained and admittedly approached the Defendants in an aggressive manner.  The complaint then describes that Defendant Neil "sat on his back and held him down." ECF No. 34 at ¶ 28.  The complaint does not mention Defendant Meachum again.

Correctional officers may use force when it is "applied in a good-faith effort to maintain or restore discipline."  Wilkins, 559 U.S. at 37.  Here, Defendants Meachum and Neil used force to restore discipline after the Plaintiff approached them and "attempted to grab his legal mail from the officers' hands."  ECF No. 34 at ¶ 27.   The use of force here was applied in good-faith and in reaction to noncompliance from the Plaintiff.

Further, the amount of force used by the two Correctional Officer Defendants here does not amount to malicious and sadistic force for the very purpose of causing harm. Under Whitley, the following factors must be balanced in determining if a defendant acted maliciously or sadistically (1) "the need for application of force" (2) "the relationship between the need and the amount of force that was used" (3) "the extent of the injury" (4) "the threat reasonably perceived by the responsible official" and (5) "any efforts made to temper the severity of a forceful response." 475 U.S. at 320-21.  First, there was a clear need for an application of force because the Plaintiff attempted to obstruct the two Defendants from conducting their walkthrough.  Next, the two Defendants only used as much force as necessary to restrain the Plaintiff.  Defendants Meachum and Neil are not accused of striking the Plaintiff after he was restrained.[11]   The Plaintiff does not allege

---

[11] The Plaintiff's complaint specifically lists Defendants Kelley, Tomlinson, Carinelli and Nicodemus as the officers who handcuffed and hit the Plaintiff while restrained.

any specific injury from Defendant Neil applying pressure to his back.  Next, Defendants Meachum and Neil reasonably perceived a threat when the Plaintiff approached him and had no way of knowing what the Plaintiff's ultimate intentions were.  The Complaint does not allege that the Plaintiff said anything to the Defendants as he approached them. Lastly, Defendants Meachum and Neil are only alleged to have restrained the Plaintiff on the ground, which is an appropriate use of force to restore discipline.

Defendants Meachum and Neil are also named in Count Five of the Plaintiff's complaint, which alleges assault and battery.  Similar to negligent training and supervision and intentional infliction of emotional distress, assault and battery is not actionable under section 1983.  Assault and battery is a tort,[12] not a civil rights violation.  However, unlike Counts Four and Six, the Plaintiff does not appear to allege assault and battery pursuant to section 1983.  While the complaint is devoid of legal authority, the supporting paragraphs do not include terminology used in section 1983 claims.  Instead, the complaint applies traditional common law assault and battery standards such as offensive touching and imminent fear of bodily harm.

While a motion to dismiss typically only "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," like immunity.  See Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted). Defendants Meachum and Neil assert qualified immunity to protect them from the Plaintiff's section 1983 suit.  However, if the Court were to review Count Five on the merits

---

[12] As noted in prior sections, the Plaintiff failed to plead supplemental jurisdiction, and this Court's authority to exercise supplemental jurisdiction is discretionary. 28 U.S.C. § 1367(a),(c).

as a tort claim, the Defendants would still be immune under West Virginia state law.  West

Virginia provides that a state employee

> is immune from liability unless . . . (1) His or her acts or omissions were manifestly
> outside the scope of employment or official responsibilities; (2) His or her acts or
> omissions were with malicious purpose, in bad faith, or in a wanton or reckless
> manner; or (3) Liability is expressly imposed upon the employee by a provision of
> this code.

W. Va. Code Ann. § 29-12A-5 (West).

Here, Defendants Meachum and Neil did not act outside the scope of their

employment by restraining the Plaintiff and there exists no evidence that the Defendants

acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Id.

Additionally, none of the other provisions in this code section expressly place liability upon

the Defendants.  Accordingly, Defendants Meachum and Neil are immune from liability

for the cause of action stated in Count Five of the complaint.  In combination with this

Court's findings here, and in the previous sections of this Order, Defendants Meachum

and Neil should be dismissed from the Plaintiff's complaint.

### H.  Defendants Tomlinson, Zentmyer & Wilcom's Partial Motion to Dismiss

Subsequent to the filing of the R&R and objections, Defendants Tomlinson,

Zentmyer and Wilcom filed a partial motion to dismiss.  ECF No. 79.  Therein, the

Defendants request that this Court dismiss the Plaintiff's claims against them in their

official capacity with prejudice, dismiss the Plaintiff's Fifth Amendment cause of action for

failure to state a claim and dismiss the Plaintiff's intentional infliction of emotional distress

cause of action for failure to state a claim.  The Plaintiff timely filed a Response in

accordance with the deadline stipulated to by the parties.  ECF No. 85.  For the reasons

that follow, the Court will **GRANT** Defendants Tomlinson, Zentmyer and Wilcom's Partial

Motion to Dismiss.  ECF No. 79.

### 1.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, the court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff and views the allegations in a light most favorable to the plaintiff.  Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).  Only factual allegations receive the presumption of truth.  Iqbal, 556 U.S. at 678-79.  A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### 2.  Analysis

The Plaintiff's complaint named Defendants Tomlinson, Zentmyer and Wilcom in their personal and official capacities.  ECF No. 34.  The Defendants move the Court to dismiss all the claims against them in their official capacity with prejudice.  The Defendants aver that sovereign immunity protects them as state actors from suit in their official capacity.  Of the claims against them in their personal capacities, the Defendants argue that the Plaintiff has failed to state a claim for a Fifth Amendment violation in Count Three and that the Plaintiff has failed to state a claim for intentional infliction of emotional distress in Count Six.

### a.  Sovereign Immunity Protection

The Eleventh Amendment prohibits a plaintiff from filing suit against a state government in federal court.   U.S. Const. amend. XI.   In his Response, the Plaintiff argues that sovereign immunity does not apply when "any right incorporated into the 14th Amendment" has been violated.   ECF No. 85 at 6.  In support, the Plaintiff cites to Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).  However, the precedent set in Bitzer does not set forth a broad exception to sovereign immunity as proclaimed by the Plaintiff.

In Bitzer, the Court held that "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against states or state officials which are constitutionally impermissible in other contexts."  Id. at 456.  The Plaintiffs in Bitzer brought suit pursuant to Title VII of the Civil Rights Act of 1964.  Id. at 445.  The Court found that the text of Title VII expressly provided for an award of attorney fees.  Id. at 457.  Therefore, *due to the*

*express provision in the statute,* the Plaintiffs were allowed to recover attorney's fees.  Id. Section 1983 has no express provision.

Instead, the Court has repeatedly held that states cannot be sued for monetary damages pursuant to § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. . . . Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.); Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("[I]mmunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess, such as the Eleventh Amendment.");  Quern v. Jordan, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."); Edelman v. Jordan, 415 U.S. 651, 675–76 (1974) ("[I]t has not heretofore been suggested that § 1983 was intended to create a waiver of a State's Eleventh Amendment immunity.").

While the Plaintiff has not named a state as a defendant, the Plaintiff has named Defendants Tomlinson, Zentmyer and Wilcom in their official capacities.  By naming the Defendants in their official capacities, it is no different than naming the State of West Virginia itself. Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." (citing Will v. Michigan Dept. of State Police, 491 U.S.

58, 71 (1989))). Therefore, this Court finds that the Defendants are indeed entitled to the protection of sovereign immunity for the claims against them in their official capacity. Accordingly, the claims against Defendants Tomlinson, Zentmyer and Wilcom in their official capacities are dismissed with prejudice.

### b.  Failure to State Claims

Defendants Tomlinson, Zentmyer and Wilcom argue that the Plaintiff has failed to state a claim for a Fifth Amendment violation in Count Three and for intentional infliction of emotional distress in Count Six.  As previously discussed by the Court in Part III.C and III.E, the Plaintiff has indeed failed to state a claim under the Fifth Amendment[13] and for intentional infliction of emotional distress.   Accordingly, Counts Three and Six of the Plaintiff's complaint are dismissed.

### IV.    CONCLUSION

Upon careful review of the R&R, the Plaintiff's objections, and Defendants Carinelli, Kelley, Nicodemus, Meachum and Neil's collective objection, the Court hereby **ADOPTS** Magistrate Judge Trumble's Report and Recommendation **IN PART**. ECF No. 68.

The Court **ADOPTS** the R&R's finding that the Plaintiff's Complaint should be **DENIED and DISMISSED WITH PREJUDICE** as to Defendants Sandy, Jividen and

---

[13] In his Response, the Plaintiff recognizes that multiple Defendants have identified the Plaintiff's mistake in bringing a Fifth Amendment violation against state actors. The Plaintiff states that his "understanding of the law is that the 14th Amendment functions to apply the 5th amendment, among others, to the actions of the states under its procedural and substantive due process provisions. As such, any claim asserting fifth amendment violations against a State governmental entity implicitly also asserts violations of the 14th Amendment." ECF No. 85 at 7.   The Plaintiff's understanding is fundamentally flawed.   The Fifth and Fourteenth Amendments are distinct, and in no instance would this Court read in implicit violations of one amendment when a plaintiff explicitly pleads the violation of another.   The Plaintiff did not file this complaint *pro se*, and thus the Court is not required to liberally construe it or bend to his proposed legal gymnastics.

Sheeley and hereby **GRANTS** Defendants Sandy, Jividen and Sheeley's Motion to Dismiss [ECF No. 43]. The Court **ADOPTS** the R&R's finding that Counts One, Three, Five, and Six should be **DENIED and DISMISSED WITH PREJUDICE** as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their official capacity. The Court **ADOPTS** the R&R's finding that Count Six should be **DENIED AND DISMISSED WITH PREJUDICE** as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their personal capacity for failure to state a claim upon which relief may be granted.

In deviating from the R&R, this Court will **DENY and DISMISS WITHOUT PREJUDICE** Count Three and **DENY and DISMISS WITH PREJUDICE** Count Four as to Defendants Kelley, Zentmyer, Tomlinson, Santos, Wilcom, Neil, Meachum, Nicodemus and Carinelli acting in their personal capacity for failure to state a claim upon which relief may be granted. Further, the Court **GRANTS** Defendant Neil's Motion to Dismiss [ECF No. 51] and **GRANTS** Defendant Meachum's Motion to Dismiss [ECF No. 52]. Defendants' Carinelli, Kelley and Nicodemus's Motion to Dismiss [ECF No. 47] is hereby **GRANTED IN PART**. Lastly, Court **GRANTS** Defendants Tomlinson, Zentmyer and Wilcom's Partial Motion to Dismiss. ECF No. 79. Accordingly, the causes of action set forth in Counts One and Five of the complaint, against all Correctional Officer Defendants, except Defendants Neil and Meachum, will be allowed to **PROCEED** for further disposition.

**DATED**: March 28, 2022

GINA M. GROH
UNITED STATES DISTRICT JUDGE

35